United States District Court
Southern District of Texas
**ENTERED**
March 09, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TIMOTHEO RIVERA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-19 |
| | § | |
| TANYA LAWSON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff Timotheo Rivera is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. For purposes of screening, Plaintiff has stated a claim for deliberate indifference to his serious medical needs against **Dr. Lannette Linthicum a.k.a. Dr. Pickthall**[1] for injunctive relief. The undersigned will order service on this defendant.

The undersigned further recommends that Plaintiff's remaining claims against all other defendants be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below.

---

[1] As discussed below, Plaintiff has stated his belief that Dr. Lannette Linthicum is the same person as one defendant named in his complaint, "Ms. Pickthall."

I.      **JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

II.     **PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID).  He is currently serving a forty-year sentence for a murder conviction entered on August 3, 2000 in Bexar County, Texas.  Plaintiff's claims in this lawsuit occurred in connection with Plaintiff's current assignment to the McConnell Unit in Beeville, Texas.

On January 10, 2018, Plaintiff filed his original complaint, naming the following officials as defendants: (1) Tanya Lawson, Medical Practice Manager; (2) Martha Tijerina, Registered Nurse (RN); (3) Dr. I. Kwarteng, Medical Director; (4) Dr. Sullivan, UTMB Galveston; and (5) Ms. Pickthall, Huntsville Medical Advisor.  Plaintiff alleges that Defendants acted with deliberate indifference to his serious medical needs by denying him proper and timely treatment for his Hepatitis C and cirrhosis conditions. Plaintiff seeks injunctive relief in the form of proper treatment for his serious medical conditions.

A *Spears*[2] hearing was conducted on February 7, 2018.   The following representations were made either at the *Spears* hearing or in Plaintiff's original complaint

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

(D.E. 1):  Plaintiff is 64 years old, 5'11" tall, and weighs 220 pounds.  Plaintiff arrived at the McConnell Unit sometime in 2014 or 2015, where he has been housed continuously until the present time.

Plaintiff was first diagnosed with Hepatitis C sometime around 2008 or 2009.  At that time, Plaintiff was housed in the Ferguson Unit in Huntsville, Texas.   While his condition was being monitored, Plaintiff did not receive any specific treatments for his Hepatitis C condition.  Dr. Sullivan, a liver specialist, informed Plaintiff that he was in need of additional treatment for his Hepatitis C condition based on a review of Plaintiff's bloodwork.   Dr. Sullivan could not provide any treatment for Plaintiff and instead referred Plaintiff to "Huntsville."   Plaintiff was last seen by Dr. Sullivan about thirty months ago.   Despite naming Dr. Sullivan in his complaint, Plaintiff clarified at the *Spears* hearing that he did not intend to sue this defendant.

Based on Dr. Sullivan's referral, Plaintiff was seen by a Huntsville physician named Dr. Lannette Linthicum.  Plaintiff believes that Dr. Linthicum later married and is the same person as one of the defendants named in his complaint, Ms. Pickthall.  Plaintiff testified that Dr. Linthicum/Pickthall is the medical official responsible for making treatment decisions for his Hepatitis C condition.   Plaintiff was first seen by Dr. Linthicum/Pickthall eight years ago.   While housed at the McConnell Unit, Dr. Linthicum informed Plaintiff via a video monitor around two years ago that he did not need any treatment because his "levels were good."   According to Plaintiff, she informed Plaintiff that TDCJ did not have the resources to provide medications costing $80,000 to all offenders inflicted with Hepatitis C.

Plaintiff testified that he has received no treatment for his Hepatitis C condition but that he is required to receive periodic MRIs for his liver at the UTMB hospital. Plaintiff first received an MRI three or four years ago and last traveled to the UTMB hospital for the MRI twenty-one months ago.   Plaintiff also underwent periodic bloodwork and lab tests for monitoring purposes.   Plaintiff stated that it has been about eighteen months since his last appointment for testing at the UTMB.   Plaintiff initially testified that he stopped going because his legs were swollen due to his Hepatitis C condition.   However, Plaintiff later testified that he stopped going to his medical appointments because the medical officials have done nothing to treat his condition.   This condition also is causing Plaintiff to suffer from abdominal pain, shortness of breath, and fatigue.

About two years ago, Plaintiff was diagnosed by UTMB doctors with cirrhosis of the liver.   Plaintiff alleges he has received no treatment for his cirrhosis condition. Sometime in 2016, Dr. Linthicum/Pickthall informed Plaintiff by video monitor that he would not be provided any treatment if he continued to skip his appointments.   Medical Practice Manager Lawson likewise informed Plaintiff that he would not receive any treatments for his Hepatitis C and cirrhosis conditions if he refused to attend his appointments.

 Plaintiff has attached a Step 2 grievance, dated October 30, 2017, to his complaint in which he complained about the medical department's nine-year delay in providing adequate treatment for his Hepatitis C condition.  (D.E. 1, p. 6).  The reviewing officer denied this grievance, citing the fact that Plaintiff was last scheduled for an appointment

on October 11, 2017, but refused the required testing and assessments.  (D.E. 1, p. 7). Plaintiff stated in his complaint, however, that he is the victim of "total games."  (D.E. 1, p. 4).  Plaintiff testified at the *Spears* hearing that he is missing appointments due in part to health problems and in part because medical officials are dragging their feet and providing excuses for nine years in not providing treatment.

Plaintiff testified that Dr. Kwarteng is the McConnell Unit's medical director. Plaintiff alleges Dr. Kwarteng refused to provide treatment for Plaintiff, instead informing Plaintiff that UTMB and Huntsville were responsible for his treatment decisions.  According to Plaintiff, RN Tijerina lied in connection with denying Plaintiff treatment for his Hepatitis C condition.  After Plaintiff submitted an I-60 request, RN Tijerina informed Plaintiff that he did not need any treatment.

Plaintiff stated that Defendants have denied Plaintiff the cure for his Hepatitis C condition despite the fact he has undergone numerous medical tests over a nine-year period.  According to Plaintiff, medical officials have failed every year to fulfill their promise to treat Plaintiff.  Plaintiff has now developed cirrhosis of the liver due to Defendants' delays.[3]

---

[3] Plaintiff further testified at the *Spears* hearing that his medications were changed and that Medical Practice Manager Lawson may have authorized such changes in retaliation for having been named in this lawsuit.  The undersigned advised Plaintiff at the *Spears* hearing that Plaintiff may later seek either to amend his complaint to raise his retaliation claim or to raise his retaliation claim in a new civil rights action.

## III.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).   A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable.  *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).   The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.   *Twombly*, 550 U.S. at 555.   As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).   To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).   A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.    DISCUSSION

### A.    Proper Defendants

Plaintiff only seeks injunctive relief in the form of proper treatment for his serious medical condition.  Plaintiff named Dr. Sullivan, a liver specialist, who informed Plaintiff that he was in need of additional treatment for his Hepatitis C condition and referred Plaintiff to "Huntsville."   Plaintiff clarified at the *Spears* hearing, however, that he did not intend to sue Dr. Sullivan in this case.

Plaintiff also named Dr. Kwarteng, the McConnell Unit's medical director, based on allegations Dr. Kwarteng refused to provide treatment for Plaintiff and instead informed Plaintiff that UTMB and Huntsville were responsible for his treatment decisions. Plaintiff acknowledged at the *Spears* hearing that: (1) Dr. Linthicum is in fact the medical official from Huntsville responsible for making treatment decisions for his Hepatitis C condition; and (2) Dr. Linthicum is the same person as "Ms. Pickthall," a defendant named by Plaintiff in the original complaint. For purposes of obtaining the requested injunctive relief, Dr. Linthicum/Pickthall rather than Dr. Kwarteng appears to be the individual most likely able to fashion the relief Plaintiff is seeking should he prevail on his deliberate indifference claim.

Plaintiff also has named Medical Practice Manager Lawson and RN Tijerina in his original complaint. Plaintiff, however, alleged no facts to indicate that these defendants were involved directly in making decisions regarding Plaintiff's treatment for his Hepatitis C and related cirrhosis conditions. Thus, the best person to implement injunctive relief in this case for Plaintiff's medical needs is Dr. Linthicum/Pickthall. The undersigned therefore respectfully recommends that: (1) Dr. Linthicum/Pickthall be substituted in place of the defendant identified as "Ms. Pickthall" as the proper defendant; and (2) Defendants Sullivan, Kwarteng, Lawson, and Tijerina be dismissed.

### B.    Deliberate Indifference to Serious Medical Needs

Prisoners are protected from cruel and unusual punishment by the Eighth Amendment. While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive

adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. A prison official acts with deliberate indifference if she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 825, 847 (1994). The official must both be aware of facts from which an inference of substantial risk of serious harm can be drawn and also draw the inference. *Easter*, 467 F.3d at 463. A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Id.*

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).

Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

Plaintiff testified at the *Spears* hearing that: (1) Dr. Kwarteng refused to provide treatment for Plaintiff for his Hepatitis C and cirrhosis conditions; (2) RN Tijerina answered one of Plaintiff's I-60 requests by advising informed Plaintiff that he did not need any Hepatitis C treatment; (3) Dr. Linthicum/Pickthall, the Huntsville doctor identified by Plaintiff as responsible for his treatment decisions, first saw Plaintiff eight years ago; (4) around two years ago, Dr. Linthicum/Pickthall informed Plaintiff through a video monitor that he did not need any Hepatitis C treatment because his "levels were good"; and (5) Dr. Linthicum/Pickthall further informed Plaintiff that TDCJ did not have the resources to provide medications costing $80,000 to all offenders inflicted with Hepatitis C.

Plaintiff states in his complaint and at the *Spears* hearing that he has stopped attending medical appointments in which he was scheduled either to receive MRIs for his liver or undergo lab tests for monitoring purposes of his conditions. His allegations indicate that he stopped making his appointments in part due to swollen legs but also due to his belief that medical officials were dragging their feet and providing excuses for nine

years in not providing proper treatment.  While Plaintiff's failure to attend the required medical appointments is of some concern, his allegations nevertheless plausibly give rise to a finding of deliberate indifference to his serious medical needs.  *See Gobert*, 463 F.3d at 346.  Taking Plaintiff's allegations as true, Plaintiff has alleged sufficient facts for purposes of stating a claim for injunctive relief against Dr. Linthicum/Pickthall.  The undersigned, therefore, recommends retaining Plaintiff's deliberate indifference claim against this defendant.

## V.      RECOMMENDATION

For the reasons stated above and for purposes of § 1915A, it is respectfully recommended that **Dr. Lannette Linthicum/Ms. Pickthall** be substituted in place of the defendant identified as "**Ms. Pickthall**," that Plaintiff's Eighth Amendment deliberate indifference claim seeking injunctive relief against **Dr. Lannette Linthicum/Pickthall** be **RETAINED**.  The undersigned will order service as to this defendant by separate order. It is respectfully recommended further that Plaintiff's deliberate indifference claims against the remaining Defendants, all for injunctive relief, be dismissed because these defendants could not provide the injunctive relief requested such that Plaintiff fails to state cognizable claims against these individuals pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 9th day of March, 2018.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).